## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMA INVESTMENTS, L.L.C., a foreign
corporation, JAMA HOLDINGS, L.L.C.,
a foreign corporation, d/b/a BEE HIVE HOMES
LOS ALAMOS, and WARRIORS, INC.,

        Plaintiffs,

vs.                                No. CIV 04-1173  JB/ACT

INCORPORATED COUNTY OF LOS ALAMOS;
COUNTY COUNCIL OF THE INCORPORATED
COUNTY OF LOS ALAMOS; GARY JEPSON,
in his official capacity as Acting Director of the
LOS ALAMOS COMMUNITY DEVELOPMENT
DEPARTMENT; KELLY CARPENTER, in her
official capacity as Director of the LOS ALAMOS
COMMUNITY DEVELOPMENT DEPARTMENT, and
the LOS ALAMOS PLANNING AND ZONING COMMISSION,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion for Partial Summary
Judgment on the Issue of Liability, filed September 29, 2005 (Doc. 56); and (ii) the Defendants'
Motion for Summary Judgment, filed September 30, 2005 (Doc. 58). The Court held a hearing on
these motions on October 20, 2005. The primary issues are whether: (i) the Defendants' actions
constitute benign discrimination; (ii) the ordinance that the Defendants passed is facially neutral; and
(iii) the Defendants made a reasonable accommodation to a generally applicable statute that was
necessary to afford handicapped people equal opportunity to use and enjoy a dwelling. Because the
Defendants have demonstrated that there are no genuine issues of material fact that the Plaintiffs'
disparate impact claim challenges a facially neutral statute, and that they are entitled to judgment as

a matter of law, the Court will grant the Defendants' motion and deny the Plaintiffs' motion on that claim. Also, the Court will deny both motions as to the disparate treatment and reasonable accommodation claims because of the presence of genuine issues as to each claim.

## FACTUAL BACKGROUND

In March 2001, Jay Manning, an agent for the Plaintiffs, submitted an Application for Land Development Permit on behalf of the Plaintiffs -- a group of companies that develop, operate, and franchise residential group homes for elderly, handicapped persons -- requesting permission to develop a group home in a residential neighborhood of Los Alamos County ("the County"). See Application for Land Development Permit at 1 (executed March 19, 2001). The County had zoned the property for a single-family residence. See id. County Code § 16-9 defined "family" as: "an individual living alone; two or more persons related by blood or marriage, or between whom there is a legally recognized relationship, occupying the same dwelling unit; or a group of not more than five unrelated persons, excluding servants, occupying the same dwelling unit." On January 28, 2003, in a purported attempt to comply with the Fair Housing Amendments Act of 1988 ("FHAA"), the County amended its Development Code to allow "up to eight individuals who have difficulty living independently or managing their own affairs, or who are handicapped within the meaning of [FHAA]" to live in a group home in areas zoned for single-family residences. County Council Minutes for January 28, 2003 at 2-5.

On April 1, 2003, Manning proposed an amendment to the County's Development Code to allow up to fourteen elderly, handicapped people to live in a group home. See April 1, 2003 Text Amendment Application at 1. In an attachment to the Text Amendment Application, Manning explained that a group home could not be maintained, given the high cost of operating a facility in

the County, that is limited to only eight residents.  See id. at 3.  A month later, the County Planning and Zoning Commission ("the Commission") recommended that the County Council deny the proposed April 2003 amendment.  See Commission Minutes for May 7, 2003 at 2.  The County Council considered the proposed April 2003 amendment and allowed the Plaintiffs to make a presentation attempting to show that a fourteen-person facility was economically necessary.  See County Council Minutes for August 19, 2003 at 1-10.  Following the Commission's recommendation, the County Council rejected the proposed April 2003 amendment, but referred the matter to its staff for the drafting of a special use ordinance that would allow up to fourteen residents in a group home in a single-family residential area and would address the County Council's concerns regarding traffic, parking, noise, landscaping, and other issues facing the community.  See id.

On September 24, 2003, Manning filed a new Text Amendment Application that would allow a group home of up to fourteen residents if the group home conformed to the requirements laid out in § 16-286.  See September 24, 2003 Text Amendment Application at 1-2.  Again, the Commission voted to recommend that the County Council deny the proposed amendment.  See Commission Minutes for November 19, 2003 at 6-7.  At a County Council hearing on the September 2003 amendment, the Plaintiffs explained the economic necessity of a fourteen-person facility and the minimal impact a fourteen-person facility would have on the residential character of the neighborhood.  See County Council Minutes for January 27, 2004 at 7.  The County Council rejected the September 2003 amendment.  See id. at 7-10.

In early January 2004, the County Council's staff drafted a Text Amendment Application to allow "elder care" facilities housing up to fourteen residents to be established in single-family residential areas by special permit, provided that at least fifty percent of the property is landscaped.

-3-

See January 8, 2004 Text Amendment Application at 1, 6.[1]  The Commission recommended that the County Council adopt the January 2004 amendment with minor modifications.  See Commission Minutes for February 11, 2004 at 4.  The County Attorney also presented, for the County Council's consideration, a separate proposed amendment that allowed group homes of between nine and fourteen residents, provided that the group home met certain conditions.[2]  See County Attorney Proposed Amendment at 2-3.  At a hearing on June 29, 2004, the County Council approved the County Attorney's proposed amendment.  See County Council Minutes for June 29, 2004 at 5-6.

Following the June 29, 2004, hearing, the County Council's staff informed the County Council that public notice of the June 29 hearing had not been published.  See County Council Meeting Staff Report at 1.  As a result, the County Council reconsidered the January 2004 amendment and the County Attorney's proposed amendment at a hearing on September 14, 2004 and voted to deny both amendments.  See County Council Minutes for September 14, 2004 at 4.

---

[1] The text of the original January 2004 amendment established a ceiling of fifteen residents. See January 8, 2004 Text Amendment Application at 6.  At the Commission's February 11, 2004, hearing, the Development Services Manager for the Community Development Department explained that the number fifteen was a mistake and that the number fourteen was the correct maximum.  See Commission Minutes for February 11, 2004 at 1.

[2] The conditions enumerated in the County Attorney's proposed amendment are: (i) the group home provides housing under a state or federal program for housing elderly persons or provides housing intended for, and occupied solely by, residents who are at least sixty-two years old; (ii) the group home meets all the requirements for establishing a group home of eight residents or less; (iii) the group home qualifies for a special use permit and shows that the group home's potential adverse effects will not be detrimental to the peace and comfort of people living nearby; (iv) a site plan is approved; (v) all required off-street parking is located behind the front yard setback with no tandem parking; (vi) a certain percentage of the property must be landscaped; and (vi) the group home meets all other requirements found in the County Development Code.  See County Attorney Proposed Amendment at 2-3.

## PROCEDURAL BACKGROUND

On February 7, 2005, the Plaintiffs filed their First Amended Complaint.  The First Amended Complaint alleged in Count I that two sections of the County Code violate the FHAA because they discriminate against "those individuals who by reason of a handicap require a communal or group living arrangement to avoid living in an institutional setting": (i) § 16-9's definition of family, limiting use of a single-family residential area to groups of five unrelated people; and (ii) § 16-286's prohibition of group homes with more than eight "handicapped" residents, as defined by the FHAA, in single-family residential areas.  First Amended Complaint ¶ 105, at 18, filed February 7, 2005 (Doc. 21).  According to the Plaintiffs, the Defendants adopted § 16-286 knowing that the eight-person limit is a "practical prohibition on the development of elderly assisted living group homes."  Id. ¶ 106, at 18.  The Plaintiffs also assert that the County Code "has a greater adverse and disparate impact on the elderly and handicapped residents of" the County.  Id. ¶ 107, at 18.  Finally, the Plaintiffs contend that the Defendants failed "to make reasonable and necessary accommodations upon request for Plaintiffs' proposed development of housing."  Id. ¶ 109, at 18.  The Plaintiffs request a jury trial on Count I.  See id. at 19.

In Count II, the Plaintiffs request declaratory and injunctive relief on the basis that the two statutes violate the FHAA.  See id. ¶ 112, at 19.  The Plaintiffs maintain that the County's enforcement of these two provisions prohibits any developer from operating a group home for the elderly.  See id. ¶¶ 114, 118, at 19-20.  The Plaintiffs request that the Court: (i) declare that the Plaintiffs' development plan is a residential use; (ii) enjoin the County from enforcing §§ 16-9 and 16-286; (iii) require the County to issue the requisite building permits that would allow the Plaintiffs to construct the proposed group home; and (iv) declare that elderly handicapped people have the right

"to reside in the same kinds of neighborhoods as non-handicapped persons, and with reasonable accommodations made therefore, as required by law, free from discriminatory practices by the County" and issue injunctive relief to secure that right.  Id. at 20.

On September 29, 2005, the Plaintiffs filed their motion for partial summary judgment on the issue of liability.  The Plaintiffs maintain that the County has failed to make a reasonable accommodation to them and to elderly handicapped people, as the FHAA requires.  See Memorandum in Support of Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability ("Plaintiff Summary Judgment Memorandum") at 9-14, filed September 29, 2005 (Doc. 57).  The Plaintiffs argue that the FHAA sets forth a burden-shifting framework for reasonable accommodation claims under the FHAA.  See id. at 9-10.  According to the Plaintiffs, they must first show that, absent the accommodation, handicapped people would be denied the opportunity to live in a particular neighborhood of their choice; after the Plaintiffs have made that showing, the Defendants must then counter with proof that the Plaintiffs' proffered accommodation is unreasonable.  See id. The Plaintiffs assert that they have met their burden by offering evidence that a group home cannot break even in the County at market rates with fewer than twelve residents  and that a group home cannot generate a "reasonable rate of return" on the initial investment without at least fourteen residents.  Id. at 11-12.  The Plaintiffs then allege that the Defendants have not shown that a fourteen-person facility would be unreasonable through an alteration of the County's zoning plan or would impose an "undue" burden on the County.  Id. at 12.  As such, § 16-286's eight-person limit on group homes is not reasonable.  See id. at 13.

Next, the Plaintiffs contend that § 16-286 intentionally discriminates against handicapped people.  See id. at 14.  First, the statute specifically limits group homes for the handicapped to a

maximum of eight residents, while leaving unrestricted the number of family members who can live together.  See id. at 14-15.  Furthermore, the Plaintiffs allege that the County Council did not study the economic requirements for a group home before imposing the eight-person requirement.  See id. at 14.  The Plaintiffs also highlight that the County Council raised concerns about traffic issues even after the Plaintiffs had presented information to alleviate those concerns and that the Defendants attempted to issue a special use permit with a requirement that fifty percent of the property be landscaped even though other single-family residential use properties are not subject to such a requirement.  See id. at 14-15.  The Plaintiffs represent that there is no evidence that the eight-person limit is justified based on safety concerns or that it actually benefits the handicapped.  See id. at 17. The Plaintiffs next contend that, even if the eight-person limit is facially neutral, it has a disparate impact on the elderly handicapped.  See id.

        In their Response, the Defendants argue that the Court should not allow the Plaintiffs' reasonable accommodation claim to go forward because only a generally applicable statute can give rise to a reasonable accommodation claim, and the challenged ordinance applies specifically to handicapped people.  See Defendant's Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment at 7-8 ("Defendants' Response"), filed October 11, 2005 (Doc. 63).  The Defendants assert that the Plaintiffs have not shown that accommodation is "necessary" to afford handicapped persons an equal opportunity to use and enjoy a dwelling because the Defendants' expert, Edward Street, has prepared a report demonstrating that an eight-person group home can be profitably operated by charging $5,000 per month, rather than the $3,500 that the Plaintiffs proposed. Id. at 9-10.  The Defendants also attack the Plaintiffs' assertion -- that the reason no other group home exists in the County is because of the eight-person limit -- by noting that a number of reasons

-7-

could be behind this phenomenon, such as the difficulty of acquiring suitable property and the alleged uncertain future of Los Alamos National Laboratory.  See id. at 12.

Turning to the intentional discrimination claim, the Defendants do not dispute that § 16-9's definition of group home discriminates regarding handicapped people; instead, the Defendants maintain that the statute discriminates in favor of handicapped people.  See id. at 12-13.  The Defendants allege that "benign" discrimination is a legally sufficient justification under the FHAA for intentional discrimination.  Id. at 14.  The Defendants point out that the fifty-percent landscaping requirement has never actually been imposed on the Plaintiffs and that any different parking requirements for group homes is because they are commercial ventures located in residential areas. See id. at 14-16.  Finally, the Defendants explain that the only obstacle preventing the Plaintiffs from building a group home is their belief that they cannot do so and make a profit.  See id. at 16.

In their Reply, the Plaintiffs state that they have shown that an accommodation is necessary because, according to the Plaintiffs' expert, Dr. Eric Christensen, an eight-person group home could not break even.  See Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability ("Plaintiffs' Reply") at 5, filed October 18, 2005 (Doc. 66).  The Plaintiffs take issue with Street's contention that they could charge $5,000 per month.  See id.  They contend that the Defendants failed to show that they made a reasonable accommodation or that the Plaintiffs' proffered accommodation was unreasonable.  See id. at 4.  According to the Plaintiffs, the Defendants have not shown that an eight-person limit is necessary to preserve the residential nature of the County's neighborhoods, or that the Plaintiffs' plan would lead to much more traffic, destroy the residential character of the County's neighborhoods, or burden the County's finances or public services.  See id.  Finally, the Plaintiffs allege that § 16-286 has a disparate impact

on the handicapped.  See id. at 7.

The Defendants filed their own motion for summary judgment on September 30, 2005.  The Defendants contend that the Plaintiffs' claim, though properly analyzed as one for intentional discrimination because § 16-9 specifically applies to handicapped people, must fail because § 16-9 treats handicapped people more favorably than other groups of unrelated people.  See Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Defendants' Summary Judgment Memorandum") at 8, filed September 30, 2005 (Doc. 59).  Furthermore, the Defendants assert that the Plaintiffs' disparate impact claim is not appropriate because § 16-9 is not facially neutral in that it allows more than five unrelated handicapped people to live together while denying the same privilege to unrelated non-handicapped people.  See id. at 9.  In addition, the Defendants argue that the Court should not allow the Plaintiffs' reasonable accommodation claim to go forward, because the Plaintiffs do not seek a reasonable accommodation from a generally applicable statute.  See id. at 10.  On the merits of the reasonable accommodation claim, the Defendants explain that the County balanced the Plaintiffs' desire to establish a group home with its "obligation to preserve the residential character of such neighborhoods."  Id. at 11.  The eight-person limit, according to the Defendants, represents the outer limit of the number of residents in a group home that could be allowed consistent with the character of a residential neighborhood.  See id. at 13.  The Defendants list various amendments that it considered in an attempt to arrive at an acceptable solution.  See id. at 13-14.  The Defendants state that large group homes can have a negative impact on residential neighborhoods, such as traffic, parking, noise, and waste disposal.  See id. at 15-16.

The Defendants also allege that the Plaintiffs have not shown that an accommodation is

necessary for the financial viability of a group home facility, because they have not shown that no group home could operate with fewer than fourteen residents.  See id. at 16-17.  The Defendants point to Street's analysis to show that an eight-person group home could operate profitably.  See id. at 19-20.  The Defendants stress that the Court should examine whether it is possible for any group home to sustain itself with eight residents.  See id. at 21.

The Plaintiffs assert in their Response that the Defendants have the burden of proving that the Plaintiffs' proffered accommodation is unreasonable.  See Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Response") at 5, filed October 7, 2005 (Doc. 61).  The Plaintiffs allege that the Defendants did not investigate whether a group home could be run with only eight residents.  See id.  The Plaintiffs highlight evidence that they had presented to the Defendants that their proposals would not adversely impact the residential character of the neighborhood, yet the Defendants rejected the Plaintiffs' proposals.  See id. at 6.  The Plaintiffs represent that they addressed all of the Defendants' concerns in their presentations before the County Council and that the Defendants made no findings that the Plaintiffs' proffered accommodation would cause undue financial or administrative burdens.  See id. at 8.  The Plaintiffs point to Christensen's analysis that an eight-person facility would lose money charging at market rates and the Defendants' purported failure to show, during the County Council's proceedings, that an eight-person cap would be reasonable.  See id. at 11-12.  Finally, the Plaintiffs contend that no group home could be operated as an eight-person facility in the County.  See id. at 12.

The Defendants assert in their Reply that the Court is not bound to consider only the evidence presented at the County Council's hearings.  See Reply Brief in Support of Defendant's Motion for Summary Judgment ("Defendants' Reply") at 3, filed October 17, 2005 (Doc. 65).  The Defendants

-10-

contend that the Plaintiffs have not addressed the Defendants' argument that § 16-9 is not a generally applicable statute.  See id. at 6.  The Defendants state that the Plaintiffs have not shown that it is impossible to charge more than $3,500 per month per resident and have failed to rebut other assumptions underpinning Street's analysis.  See id. at 6-7.  Instead, the Defendants argue that Street's analysis shows that it is reasonably possible for a non-franchise group home operator to operate in the County with only eight residents.  See id. at 7-8.  Finally, the Defendants explain that, even though the Plaintiffs presented evidence that their fourteen-person facility would not impact the residential character of that particular neighborhood, the proffered accommodations would have to apply across the entire County; therefore, it was appropriate for the County to conclude, based on the ordinance's effects on the County as a whole, that allowing more than eight residents to live together in a group home would ultimately adversely impact the residential character of the County's neighborhoods in general.  See id. at 8.

At the hearing on October 20, 2005, the Plaintiffs expressed their belief that there are genuine issues on the reasonable accommodation such that the claim must go forward to trial.  See Transcript of Hearing at 4:9-5:2 (taken October 20, 2005).[3]  The Plaintiffs explained that they believed they must propose an accommodation to the Defendants, and then the Defendants must show that the proffered accommodation is unreasonable.  See id. at 7:24-8:4.  The Plaintiffs contended that the Defendants must show that the accommodation imposes undue financial and administrative burdens, imposes undue hardship on the municipality, or requires a fundamental alteration of the nature of the zoning program.  See id. at 8:23-9:3.  The Plaintiffs conceded that their argument that a negligible rate of

---

[3] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

return is not a reasonable accommodation is a minority position.  See id. at 10:18-11:6.  The Plaintiffs

stated that the Court must consider only the evidence before the County at the time it made its

decision on the Plaintiffs' proposed accommodations because an equal protection analysis, analyzing

whether a rational basis existed for a state actor's decision, is inapplicable to FHAA claims.  See id.

at 12:11-14:8.  On that basis, the Plaintiffs represented that the County Council did not show, at its

hearings, that a fourteen-person facility would not be a reasonable accommodation.  See id. at 35:9-

13.

As for their intentional discrimination claim, the Plaintiffs accused the Defendants of putting

conditions on the operation of a group home for the handicapped which they do not require for other

single family residences.   See id. at 15:12-16:2.  The Plaintiffs clarified that the focus of their

discrimination is that the County has not imposed a numerical maximum on the number of family

members living together.  See id. at 16:11-17:1.  The Plaintiffs also pointed to the County's attempt,

through its special use ordinance, to impose additional conditions involving landscaping.  See id. at

17:5-14.

The Defendants responded that the Court may look at evidence that was not presented at the

County Council's hearings because this case is not an appeal of an administrative decision.  See id.

at 18:25-19:12.  The Defendants explained that whatever burden-shifting analysis applies in FHAA

cases does so when a party sues in federal court, not when a legislative body makes a decision on

accommodations.  See id. at 35:25-36:6.  The Defendants contended that § 16-9's discrimination

operated to the benefit of handicapped people because eight unrelated handicapped people could now

live in a group home under the statute, whereas, before the ordinance, group homes could contain

no more than five residents.  See id. at 21:4-17.  The Defendants characterize the Plaintiffs' challenge

-12-

as limited to the eight-person limit.  See id. at 21:18-25.  The Defendants stressed that the Plaintiffs must show that, in general, group homes cannot operate profitably without at least fourteen residents. See id. at 29:3-9, 32:9-15.  The Defendants argued that, in opposition to Street's analysis, the Plaintiffs only offered one letter from another franchise operator.  See id. at 32:16-23.

### STANDARD FOR DECIDING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The opposing party may not rest upon mere allegations and denials in the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(citing Fed. R. Civ. P. 56(e)).  An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a jury could reasonably return a verdict for the non-moving party.  See id. at 249-50 (citations omitted).  Mere assertions or conjecture as to factual disputes are not enough to survive summary judgment.  See Branson v. Price River Coal Co., 853 F.2d 768, 771-72 (10th Cir. 1988).  The Court may only consider admissible evidence when ruling on a motion for summary judgment.  See World of Sleep, Inc. v. La-Z-Boy Chair, Co., 756 F.2d 1467, 1474 (10th Cir. 1985)(citing Fed. R. Civ. P. 56(e)).

### LAW ON FHAA CLAIMS

The FHAA's guarantee of fair treatment regarding housing for the handicapped can be violated in three ways: disparate treatment, disparate impact, and failure to make a reasonable accommodation.  See Bangerter v. Orem City Corp., 46 F.3d 1491, 1501 (10th Cir. 1995) (citations

-13-

omitted).  A disparate treatment claim can be established in one of two ways: either through proof of a facially discriminatory ordinance or through indirect evidence of intentional discrimination via the burden-shifting framework of <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Bangerter v. Orem City Corp.</u>, 46 F.3d at 1500 & n.16; <u>Keys Youth Services v. City of Olathe</u>, 248 F.3d 1267, 1273 & n.6 (10th Cir. 2001).  A facially discriminatory ordinance specifically singles out the handicapped and applies different rules to them.  <u>See</u> <u>Bangerter v. Orem City Corp.</u>, 46 F.3d at 1500.   The defendant's motive is irrelevant to the issue whether an ordinance is facially discriminatory, for "a plaintiff need not prove the malice or discriminatory animus of a defendant to make out a case of intentional discrimination where the defendant expressly treats someone protected by the FHAA in a different manner than others."  <u>Id.</u> at 1501 (citations omitted).  As the United States Court of Appeals for the Tenth Circuit has indicated, "a plaintiff makes out a prima facie case of intentional discrimination under the FHAA merely by showing that a protected group has been subjected to explicitly differential – i.e. discriminatory – treatment."  <u>Id.</u>  Where a statute "discriminates on its face by allowing conditions to be imposed on group housing for the handicapped which would not be permitted for non-handicapped group housing," then the Tenth Circuit has stated that "[t]here is no need to probe for a potentially discriminatory motive circumstantially, or to apply the [<u>McDonnell Douglas</u>] burden-shifting approach."  <u>Id.</u> at 1500 n. 16.    "The ultimate question in a disparate treatment case is whether the defendant intentionally discriminated against plaintiff." <u>Id.</u> at 1502 (citing <u>Honce v. Vigil</u>, 1 F.3d 1085, 1088 (10th Cir. 1993)).  An FHAA plaintiff suing for discrimination on the basis of handicap must show that the Defendants permit group homes for the non-handicapped without the requirements allegedly imposed only on group homes for the handicapped.  <u>See</u> <u>id.</u>  Two potential justifications for facially discriminatory conditions are "public

-14-

safety" and "benign discrimination." Id. at 1503.

The Tenth Circuit has warned that courts "should be chary about accepting the justification that a particular restriction upon the handicapped really advances their housing opportunities rather than discriminates against them in housing." Id. at 1504. The Tenth Circuit has discussed the limits of a benign discrimination defense:

> Restrictions that are based upon unsupported stereotypes or upon prejudice and fear stemming from ignorance or generalizations, for example, would not pass muster. However, restrictions that are narrowly tailored to the particular individuals affected could be acceptable under the FHAA if the benefit to the handicapped in their housing opportunities clearly outweigh whatever burden may result to them. In the context of facially neutral government actions that have a discriminatory impact on the handicapped or other groups protected by the [FHAA], courts have uniformly allowed defendants to justify their conduct despite the discriminatory impact if they can prove that they furthered in theory and in practice, a legitimate, bona fide governmental interest and that no alternative would serve that interest with less discriminatory effect. A similar approach has been suggested in the context of intentional race-based discrimination under the FHAA. . . . Even those courts that have invalidated particular race-conscious policies have left some room for other policies that restrict minorities in limited ways in order to foster integration and the overarching policies of the Fair Housing Act. . . . These courts all recognize the importance of leaving room for flexible solutions to address the complex problem of discrimination and to realize the goals established by Congress in the [FHAA].

Id. at 1504-05 (citations and internal quotations omitted).

A disparate impact claim is only appropriate when the statute or action challenged is facially neutral. See id. at 1501. "A disparate impact analysis examines a facially-neutral policy or practice, such as a hiring test or zoning law, for its differential impact or effect on a particular group." Id. (citations and internal quotations omitted).

In addition to disparate treatment and disparate impact, FHAA discrimination includes a "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a

-15-

dwelling." 42 U.S.C. § 3604(f)(3).  See also Bangerter v. Orem City Corp., 46 F.3d at 1501-02 (applying the FHAA's reasonable accommodation provision specifically to discrimination on the basis of handicap).  "[T]he thrust of a reasonable accommodation claim is that a defendant must make an affirmative change in an otherwise valid law or policy."  Bangerter v. Orem City Corp., 46 F.3d at 1501-02.  A reasonable accommodation involves "changing some rule that is generally applicable so as to make its burden less onerous on the handicapped individual."  Id. at 1502.   A reasonable accommodation claim is "simply inappropriate" if asserted against a statute that is not generally applicable.  Id.  The FHAA requires an accommodation when one is reasonable and necessary to afford the handicapped individual an equal opportunity to use and enjoy a dwelling.  See Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment of the Township of Scotch Plains, 284 F.3d 442, 457 (3d Cir. 2002)(citation omitted); Groner v. Golden Gate Gardens Apts., 250 F.3d 1039, 1044 (6th Cir. 2001)(citations omitted); Bryant Woods Inn v. Howard County, 124 F.3d 597, 603 (4th Cir. 1997)(citation omitted).

Although the United States Court of Appeals for the Third Circuit has stated that "federal courts should limit their review to the materials that were presented to the local land use board, except in circumstances where the board prevents applicants from presenting sufficient information" and that "a reviewing court should not look outside the record when reviewing an FHAA reasonable accommodations challenge to a local land use decision," Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment, 284 F.3d at 450, the Tenth Circuit has not adopted such a rule.  In Bangerter v. Orem City Corp., the Tenth Circuit ruled that a rational basis analysis is not applicable to FHAA claims because FHAA claims are based on a statute, not the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.  See Bangerter v. Orem City Corp., 46 F.3d at 1503.

-16-

In that case, the Tenth Circuit did not state that a factfinder is limited to the evidence presented before a lawmaking body. Furthermore, the Tenth Circuit remanded the case back to the district court to develop a more complete record. See id. at 1505.

In Keys Youth Services v. City of Olathe, the Tenth Circuit ruled that the defendant cannot be held liable for failing to make a reasonable accommodation when the plaintiff did not explain to the defendant, during the defendant's consideration of an accommodation, that the accommodation was necessary. See Keys Youth Services v. City of Olathe, 248 F.3d at 1276. The Tenth Circuit came to this conclusion because the defendant "cannot be liable for refusing to grant a reasonable and necessary accommodation if the [defendant] never knew the accommodation was in fact necessary." Id.

The Tenth Circuit has not provided guidance on which party bears the burden of proof in a reasonable accommodation claim. Other Circuits have split on this question. In the Third Circuit, "the plaintiff bears the initial burden of showing that the requested accommodation is necessary to afford handicapped persons an equal opportunity to use and enjoy a dwelling, at which point the burden shifts to the defendant to show that the requested accommodation is unreasonable." Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment, 284 F.3d at 457. The Third Circuit came to this result by analogizing to its cases under the Vocational Rehabilitation Act of 1973 ("Rehabilitation Act"), which also placed the burden of showing that an accommodation was unreasonable. See id. at 457. See also Hovsons, Inc. v. Township of Brick, 89 F.3d 1096, 1103 (3d Cir. 1996)("Our precedents interpreting § 504 of the Rehabilitation Act have held that the burden of proving that a proposed accommodation is not reasonable rests with the defendant." (citations omitted)).

The United States Courts of Appeals for the Fourth, Fifth, Sixth, and Eleventh Circuits

-17-

allocate the reasonable accommodation burden differently.  These Circuits require the plaintiff to show that an accommodation is reasonable, rather than forcing the defendant to show that an accommodation is unreasonable.  See Loren v. Sasser, 309 F.3d 1296, 1302 (11th Cir. 2002)(citations omitted); Groner v. Golden Gate Gardens Apts., 250 F.3d at 1045; Bryant Woods Inn v. Howard County, 124 F.3d at 603-04 (citation omitted); Elderhaven, Inc. v. City of Lubbock, 98 F.3d 175, 178 (5th Cir. 1996).  As the Sixth Circuit has explained, courts may properly look to cases construing the Rehabilitation Act's reasonable accommodation language because the report which the House of Representatives issued and which accompanied the FHAA cites to a Supreme Court of the United States case interpreting the Rehabilitation Act.  See Smith & Lee Assocs. v. City of Taylor, 102 F.3d 781, 795 (6th Cir. 1996)("As several courts have noted, the House Report's numerous references to Section 504 indicate that Congress intended courts to apply the line of decisions interpreting 'reasonable accommodations' in [Rehabilitation Act] cases when applying the FHAA.").

> In the Tenth Circuit,
>
> a plaintiff bears the ultimate burden of proving she is 'qualified' within the meaning of the Rehabilitation Act, i.e., that there are jobs available that her disability will nevertheless allow her to do, with or without reasonable accommodation. However, a plaintiff's burden with respect to the plausibility of reasonable accommodation is one of production only. In accordance with section 501 of the Rehabilitation Act's mandate that federal employers act affirmatively to provide reasonable accommodation for disabled workers, this burden of production "is not a heavy one. It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." Once the plaintiff has made this facial showing that accommodation is possible, the burden shifts to the defendant to prove that accommodating the plaintiff would pose an undue hardship.

Woodman v. Runyon, 132 F.3d 1330, 1334 (10th Cir. 1997).

<u>ANALYSIS</u>

The Court will deny the Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability.  The Court will grant the Defendants' Motion for Summary Judgment on the disparate impact claim and deny it on the disparate treatment and reasonable accommodation claims.

## I.  THE COURT WILL DENY BOTH MOTIONS FOR SUMMARY JUDGMENT AS TO THE DISPARATE TREATMENT CLAIM.

An FHAA plaintiff can prove disparate treatment in one of two ways: proof of a facially discriminatory ordinance or indirect evidence of intentional discrimination through the burden-shifting framework of <u>McDonell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Bangerter v. Orem City Corp.</u>, 46 F.3d at 1500 & n.16; <u>Keys Youth Services v. City of Olathe</u>, 248 F.3d at 1273 & n.6.  Both parties agree that § 16-9 is facially discriminatory.  <u>See</u> Plaintiff Summary Judgment Memorandum at 14; Defendants' Response at 12-13.

The issue separating the parties is whether the ordinance discriminates in favor of group homes for the handicapped.  The Defendants argue that § 16-9 discriminates to the benefit of handicapped people, because up to eight unrelated handicapped people may live in a group home under that ordinance, unlike other groups of unrelated people who can only live in group homes of up to five people.  <u>See</u> Defendants' Summary Judgment Memorandum at 8.  Group homes for the handicapped are, therefore, advantaged because they may house more residents than other types of group homes.  <u>See</u> <u>id.</u>  The Plaintiffs, however, point out that the ordinance still limits group homes for the handicapped to eight people when there is no such cap on the number of related people who can live together.  <u>See</u> Plaintiff Summary Judgment Memorandum at 14.

The Court concludes that neither party has demonstrated that there are no genuine issues of

material fact regarding the disparate treatment claim.  The Tenth Circuit has indicated that a benign discrimination defense could be valid when the statute in question is "narrowly tailored to the particular individuals affected"  and "the benefit to the handicapped in their housing opportunities clearly outweigh whatever burden may result to them."  Bangerter v. Orem City Corp., 46 F.3d at 1504.  The Defendants have not attempted to show that the benefit to the elderly handicapped in the County of an eight-person limit outweighs the burden that they may suffer from being subject to such a maximum.  Instead, the Defendants rely on the conclusory assertion that § 16-9 discriminates in favor of handicapped people by allowing them to live together in greater numbers in group homes than other, unrelated people.  See Defendants' Summary Judgment Memorandum at 8.  Similarly, the Plaintiffs have not explained why the ordinance does not benefit the County's handicapped population, beyond their representation that the ordinance should have discriminated in their favor even further by removing the cap on the number of residents in group homes entirely.  See Plaintiffs' Reply at 7; Transcript of Hearing at 16:11-17:1.  As a result, the Court will deny both parties' motion for summary judgment on the disparate treatment claim.

## II.     THE COURT WILL GRANT THE DEFENDANTS' AND DENY THE PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT ON THE DISPARATE IMPACT CLAIM.

The Plaintiffs contend that § 16-9 disparately impacts the elderly handicapped.  See Plaintiff Summary Judgment Memorandum at 14.  The Tenth Circuit, however, has stated that a disparate impact analysis examines a facially neutral policy or practice for its differential impact or effect on a particular group.  See Bangerter v. Orem City Corp., 46 F.3d at 1501.  The Defendants argue that § 16-9 is not facially neutral because it applies specifically to group homes for the handicapped and benefits such group homes.  See Defendants' Summary Judgment Memorandum at 9.

-20-

The Court agrees with the Defendants that § 16-9 is not facially neutral and, consequently, a disparate impact claim against it is inappropriate.  Normally, more than five unrelated people cannot live together in a residence zoned for single families under § 16-9's definition of family. Section 16-9 states that a group home may house "up to eight individuals who have difficulty living independently or managing their own affairs, or who are handicapped within the meaning of [FHAA]."  On its face, § 16-9 creates a rule allowing up to eight people to live together in a group home, but only if they have difficulty living independently or managing their own affairs, or are handicapped.  Section 16-9 explicitly sets aside handicapped people by mentioning them in the statute itself and applies a rule to them that is different from other unrelated people in a group home. Section 16-9 is therefore not facially neutral because it applies specifically, on its face, to handicapped people.  Because Bangerter recognizes disparate impact challenges only against facially neutral statutes, and § 16-9 is not facially neutral, the Plaintiffs' disparate impact claim against § 16-9 must fail.

## III.  THE COURT WILL DENY BOTH PARTIES' MOTIONS FOR SUMMARY JUDGMENT ON THE REASONABLE ACCOMMODATION CLAIM.

The Plaintiffs argue that the Defendants refused to make a reasonable accommodation necessary to afford handicapped people an equal opportunity to use and enjoy a dwelling by refusing to set the maximum number of residents in a group home for the handicapped at a number higher than eight.  See Plaintiff Summary Judgment Memorandum at 9-14.  The Defendants contend that amending the Development Code to allow up to eight residents in a group home for the handicapped was a reasonable accommodation to the Plaintiffs' needs, that the Plaintiffs' reasonable accommodation claim improperly attacks a generally applicable statute, and that the Plaintiffs have not shown that an accommodation was necessary.  See Defendants' Response at 7-10; Defendants'

Summary Judgment Memorandum at 11-16.

At the outset, the Court must address the Defendants' assertion that the Court, without even reaching the merits of the Plaintiffs' reasonable accommodation claim, must dismiss the claim because § 16-9 is allegedly not a generally applicable statute. <u>Bangerter</u> limited reasonable accommodation claims to situations where an FHAA defendant has refused to make a reasonable accommodation to a generally applicable statute. <u>See</u> <u>Bangerter v. Orem City Corp.</u>, 46 F.3d at 1501-02. The Defendants argue that § 16-9 is not a generally applicable statute because it singles out handicapped people and treats them differently than other unrelated residents of a group home. <u>See</u> Defendants' Summary Judgment Memorandum at 10.

The Defendants' argument, however, misunderstands the nature of the Plaintiffs' reasonable accommodation claim. The Plaintiffs object to the Defendants' alleged failure to make a reasonable accommodation to the original, unamended § 16-9, which prohibited any group of more than five unrelated people from living together. Because the original statute's prohibition applied to all unrelated people, and not handicapped people exclusively, the original statute was a generally applicable ordinance. Essentially, the Plaintiffs are seeking relief because the Defendants allegedly refused to make a reasonable accommodation to the *original*, *generally applicable statute*, to make its burden less onerous on handicapped people by allowing group homes for the handicapped to take into their facilities up to fourteen people. The Plaintiffs dismiss, in their briefs, the adoption of an eight-person limit because it is purportedly not a reasonable accommodation in light of the profit the Plaintiffs could make from such a facility. The Plaintiffs, therefore, are suing on the Defendants' alleged failure to make a reasonable accommodation to a generally applicable statute.

The next issue that the Court must address in resolving the Plaintiffs' reasonable

accommodation claim is: What materials may the Court consider in deciding whether a genuine issue of material fact exists on this claim?  The Plaintiffs, citing to <u>Bangerter</u> and <u>Keys Youth Services</u>, maintain that the Court can only consider the evidence presented to the County Council, <u>see</u> Transcript of Hearing at 12:11-14:8,[4] while the Defendants assert that the Court can consider any evidence, <u>see</u> Defendants' Reply at 3.

The Court concludes that it may consider any evidence that the parties submit so long as that evidence conforms to the Federal Rules of Evidence; its review of the Defendants' actions are not circumscribed by what occurred in the legislative proceedings before this lawsuit commenced.  The Plaintiffs correctly argue that <u>Bangerter</u> declared a "rational basis" analysis to be inapplicable in an FHAA case, but then reason from this holding that the Tenth Circuit intended to bar courts from considering evidence beyond that which a zoning agency considered.  It does not, however, follow from this ruling that the Tenth Circuit intended that district courts focus on only the evidence brought before the lawmaking body.  The particular passage cited by the Plaintiffs concerned what justifications a defendant may propound in avoiding liability under the FHAA.  See <u>Bangerter v. Orem City Corp.</u>, 46 F.3d at 1503-04.  The Tenth Circuit explained that an analysis similar to that under the Equal Protection Clause, with graduated levels of scrutiny depending on the allegedly discriminated group, is improper in FHAA claims because the former is constitutional and the latter is statutory.  <u>See id.</u> at 1503.  In effect, the Tenth Circuit ruled out a rational basis analysis, which would have allowed defendants to justify their actions if they were rationally related to a legitimate

_____

[4] Curiously, the Plaintiffs, in their Reply, appear to concede that "this Court may consider new evidence presented by Defendants in determining [the Plaintiffs' Summary Judgment Motion]." Plaintiffs' Reply at 4.  Because the Plaintiffs reiterated at the hearing their belief that the Court can only consider the evidence presented at the County Council's proceedings on this matter, the Court will address whether its review in this case is so limited.

governmental purpose, for the reason that rational basis comes into play when a constitutional, not statutory, right is at issue.  See id.  Because the FHAA concerns statutory rights, according to the Tenth Circuit, a court should not examine the Defendants' actions under the light of the rational basis standard.  See id.  Instead, courts should "look to the language of the FHAA itself, and to the manner in which analogous provisions of Title VII have been interpreted, in order to determine what justifications are available to sustain intentional discrimination against the handicapped."  Id.  Indeed, portions of Bangerter suggest that the Court is to develop its own record in considering liability.  See id. at 1505 ("Only after a record has been developed can the district court, and ultimately [the Tenth Circuit], determine whether these restrictions violate of [sic] the FHAA.").

Similarly, Keys Youth Services does not limit wholesale the Court's ability to examine evidence outside of the proceedings before the County Council.  The Plaintiffs point to Keys Youth Services's holding that an FHAA defendant cannot be liable when an FHAA plaintiff fails to inform the defendant that an accommodation is necessary.  Keys Youth Services arrived at this result because it would be unfair to say that the defendant intentionally refused to make a necessary accommodation when the defendant did not know it was necessary.  See Keys Youth Services v. City of Olathe, 248 F.3d at 1275-76.  In this case, neither party contends that the Defendants were unaware that the Plaintiffs believed that they needed to house more than eight people to make a profit; indeed, the Plaintiffs repeatedly attempted to amend the Development Code on that ground.  With the Defendants' knowledge established, Keys Youth Services does not say what evidence the Court may consider.  The Court will thus consider all evidence submitted by the parties that falls within the strictures of the Federal Rules of Evidence.

Turning to the merits of the Plaintiffs' reasonable accommodation claim, the Court finds that

-24-

a genuine issue exists on this claim.  The Plaintiffs represent that an accommodation is necessary because an eight-person facility, charging the market rate for group homes, cannot survive financially in the County.  The Plaintiffs offered evidence that the base rate in the County is $3,000 and the average market rate is $3,500 per patient per month.  See Deposition of Jay T. Manning at 54:12-55:16 (taken July 11, 2005).  According to the Plaintiffs' expert, an eight-person facility cannot break even at these rates.  See Letter to Judd C. West, Esquire, from Dr. Eric W. Christensen at 3-4 (signed March 7, 2005).  The Plaintiffs argue from the data that the Defendants have not made a reasonable accommodation to the original limit of five unrelated persons, even when the County Council amended the Development Code to allow up to eight residents in a group home.  See Plaintiffs' Response at 10-11.

The Defendants rebut the Plaintiffs with their own expert, Street, whose findings indicate that an eight-person group home can endure in the County by charging $5,000 per patient per month because of the high average income in the County.  See Expert Report of Edward R. Street at 2-5. The Plaintiffs attack Street's report by arguing that he improperly eliminated the amortization of the initial franchise and the depreciation of the property's value, both allegedly valid expenses.  See Plaintiffs' Response at 10.

As this discussion illuminates, the parties' evidence creates genuine issues of fact for trial. The parties have presented conflicting evidence as to the appropriate market rate for care in a group home for the elderly handicapped.  The parties have not rested their arguments on mere conjecture about the correct market rate, but instead have offered expert opinions to substantiate their assertions. See Branson v. Price River Coal Co., 853 F.2d at 771-72.  The genuine issue on the correct market rate prevents the Court from determining whether an accommodation is necessary and whether the

-25-

Defendants have made a reasonable accommodation. This conclusion is the same regardless which party has the burden of proof in a reasonable accommodation claim, because each party has presented evidence rebutting the other party's contentions.  As a result, the Court will deny both parties' motions for summary judgment on the reasonable accommodation claim.

**IT IS ORDERED** that the Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability is denied and the Defendants' Motion for Summary Judgment is granted on the disparate impact claim and denied on the disparate treatment and reasonable accommodation claims.


UNITED STATES DISTRICT JUDGE

*Counsel:*

Jeffrey A. Dahl
Lamb, Metzgar, Lines & Dahl, P.A.
Albuquerque, New Mexico

– and –

Stanley N. Hatch
Hatch, Allen & Shepherd
Albuquerque, New Mexico

> *Attorneys for Plaintiffs Jama Investments LLC and Jama Holdings, LLC*

Stanley N. Hatch
Hatch, Allen & Shepherd
Albuquerque, New Mexico

– and –

Judd C. West
Doughty & West PA
Albuquerque, New Mexico

> *Attorneys for Plaintiff Warriors, Inc.*

Pamela S. Bacon
Peter A. Dwyer
Daniel A. Gonzales
County Attorneys
Los Alamos, New Mexico

– and –

Randy S. Bartell
Carolyn A. Wolf
Montgomery & Andrews
Santa Fe, New Mexico

> *Attorneys for Defendants*