IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAMA INVESTMENTS, L.L.C., a foreign
corporation, JAMA HOLDINGS, L.L.C.,
a foreign corporation, d/b/a BEE HIVE HOMES
LOS ALAMOS, and WARRIORS, INC.,

        Plaintiffs,

vs.                                                         No. CIV 04-1173  JB/ACT

INCORPORATED COUNTY OF LOS ALAMOS;
COUNTY COUNCIL OF THE INCORPORATED
COUNTY OF LOS ALAMOS; GARY JEPSON,
in his official capacity as Acting Director of the
LOS ALAMOS COMMUNITY DEVELOPMENT
DEPARTMENT; KELLY CARPENTER, in her
official capacity as Director of the LOS ALAMOS
COMMUNITY DEVELOPMENT DEPARTMENT,
and the LOS ALAMOS PLANNING AND
ZONING COMMISSION,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Motion in Limine to Exclude Members of the County Council and Planning and Zoning Commission as Witnesses and Points and Authorities in Support Thereof, filed February 8, 2006 (Doc. 71). The Court held a hearing on this motion on February 17, 2006. The primary issue is whether legislative immunity bars members of the Los Alamos County Council ("County Council") from testifying at trial. Because the legislators' actions were legislative in nature, the Court will grant the motion.

## FACTUAL BACKGROUND[1]

At a hearing on January 27, 2004, the County Council considered a Text Amendment Application that the Plaintiffs had submitted. See County Council Minutes for January 27, 2004 at 7. To address concerns that a fourteen-resident group home would injure the residential character of single family residential neighborhoods, Councilor Fran Berting offered a substitute amendment that would allow a fourteen-resident group home if it complied with the requirements spelled out in County Code § 16-286. See id. at 8. After offering her substitute amendment, Berting "noted [that] she had visited a Beehive Homes facility in Farmington and found it was consistent with the neighborhood." Id. at 8.

During a later hearing, on September 14, 2004, the County Council reconsidered a proposed Text Amendment Application and a separate proposed amendment drafted by the County Council staff and the County Attorney, respectively. See County Council Minutes for September 14, 2004 at 2. Berting offered a substitute amendment that allowed group homes to house more than the eight-person maximum by a special use permit, provided that the ordinance authorizing such special use permits was "substantially as recommended by the County Attorney" and that twenty-five percent of the land is devoted to landscaping and twenty percent to walkways. Id. at 3-4. The County Council accepted the substitute by a vote of 4-2, and the County Council then heard public comment on the substitute motion. See id. at 4. Jeff West, Beehive Homes' attorney,

> expressed concern that the discussion has centered on the interests of the neighborhood versus the interests of Beehive Homes. . . . If Council is taking into consideration the citizens [sic] concerns with changing the character of the neighborhood, the number of bedrooms in the home and resale, this is an improper

---

[1] For a more complete factual and procedural history of this case, see Memorandum Opinion and Order at 2-13, filed February 16, 2006 (Doc. 85).

government interest. What should be looked [at] is the ability for the elderly to live in a residential neighborhood. If Council is prohibiting the elderly from living in certain zoned areas[,] this goes against the Fair Housing Act.

Id.

According to the minutes of the hearing, Councilor Diane Albert stated that "she was not interested in what goes on in people's houses, but she is interested in preserving the character of communities[,] which is why there is zoning." Id. Councilor Jim West then said that he

felt eight residents was a good number for an area zoned for single family residences. He did not think the issue was a place to live, but profit. Council is interested in the people[,] not the profit. Citizens who already live in a neighborhood need to have their concerns addressed. He reiterated [that] he disliked being threatened with lawsuits.

Id.

According to a transcript that the Plaintiffs attached to their summary judgment motion, Albert stated: "So, I remember when you read that about the zoning and, you know, if people want to bring legal action up against the County, bring it on. You know, don't threaten me with a lawsuit. If you want to do that, bring it on. We have good attorney[s]." Transcription of Los Alamos County Council Meeting, 9/14/04 at 1. Jim West said: "And I will state again and I hope for the last time, I am really getting tired of being beat over the head with the law and I don't want to hear it again." Id.

## PROCEDURAL BACKGROUND

On February 8, 2006, the Defendants filed a motion in limine to exclude past and current members of the County Council and the County Planning and Zoning Commission ("the Commission") from testifying at trial because of legislative immunity and because their testimony would be irrelevant. See Defendant's Motion in Limine to Exclude Members of the County Council and Planning and Zoning Commission as Witnesses and Points and Authorities in Support Thereof ("Motion in Limine")

at 1.  The Defendants identified the following past or present members of the County Council as potential witnesses in the trial to testify "regarding the promulgation of amendments to the County Code and the denial of Plaintiff's requested text amendments, as well as the matters discussed relative to these issues at County Council meetings as set forth in meeting[s and] audio tapes, video tapes, and certified minutes of Council Meeting[s]": (i) Nona Bowman; (ii) Diane Albert; (iii) Frances Berting; (iv) Geoff Rodgers; (v) Jim West; (vi) Michael Wheeler; and (vii) Michael Wismer.  Id. at 1-2.  The Defendants identified the following past or present members of the Commission as potential witnesses in the trial to testify "regarding their recommendations for amendments to the Code and denial of requested text amendments, as well as matters discussed relative to these issues at [Commission] meetings and workshops": (i) Christopher Ortega; (ii) Dan Morgan; (iii) JJ Maier; (iv) Fred Roach; (v) Christine Chandler; (vi) John Chapman; (vii) David Kloepper; (viii) Sidney Singer; (ix) Janie O'Rourke; (x) Matthew Miles; and (xi) Kirt Anderson.  Id. at 2.  The Defendants argue that the actions for which these witnesses may be called to testify occurred while these individuals were acting in a policymaking capacity.  See id. at 4.

In their Response, the Plaintiffs represent that they do not intend to call all members of the County Council as witnesses.  See Plaintiffs' Response to Defendants' Motion in Limine ("Response") at 1, filed February 11, 2006 (Doc. 78).  The Plaintiffs state that they have issued subpoenas only to the following witnesses: (i) Diane Albert; (ii) Frances Berting; (iii) Geoff Rodgers; and (iv) Jim West.  See id.  The Plaintiffs state that they understand that Diane Albert is no longer in the state of New Mexico and that service of process may not be possible on her.  See id.  The Plaintiffs do not intend to call any members of the Commission.  See id.

The Plaintiffs urge the Court to deny the motion because legislative immunity does not cover

the acts that are the basis of the Councilors' proposed testimony. See id. at 2-3. The Plaintiffs characterize the Councilors' comments at the hearings as administrative, not legislative, in nature and amount to an effort to censure the Plaintiffs for attempting to vindicate their rights under federal law. See id. The Plaintiffs contend that direct attacks on them cannot give rise to legislative immunity. See id. at 3. In their Reply, the Defendants assert that all of the Councilors' statements took place during the consideration and deliberation of amendments to the County Code. See Defendant's Reply in Support of Motion in Limine to Exclude Members of the County Council and Planning and Zoning Commission as Witnesses with Points and Authorities ("Reply") at 2, filed February 15, 2006 (Doc. 83).

At the hearing on February 17, 2006, the parties identified the statements by Albert, Berting, and Jim West as the reason that the Plaintiffs wish to call these Councilors to the stand at trial. See Transcript of Hearing at 5:1-9, 8:7-13 (taken February 17, 2006).[2] The Plaintiffs explained that some of the particular statements that they want to introduce are not in the minutes but in an electronic recording of a County Council meeting. See id. at 9:21-10:4. The Plaintiffs indicated that, because of the likelihood that legislative immunity protects Berting's testimony and that Albert is out of the state, the only real issue between the parties was over Jim West's testimony. See id. at 10:5-23.

## LAW REGARDING LEGISLATIVE IMMUNITY

The American common law doctrine of legislative immunity – that legislators are "free from arrest or civil process for what they do or say in legislative proceedings" – springs from the English Parliament's struggle for independence from the King over the course of the sixteenth and seventeenth

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

centuries. Tenney v. Brandhove, 341 U.S. 367, 372 (1951). After Parliament's final triumph over the Stuart dynasty in the Glorious Revolution of 1688, the English Bill of Rights affirmed that "the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament." Id. The principle of legislative immunity "was taken as a matter of course by those who severed the Colonies from the Crown and founded our Nation" and enshrined in the Articles of Confederation and the United States Constitution's Speech and Debate Clause, id. at 372-73, which provided that congressmen, "for any speech or debate in either House, . . . shall not be questioned in any other place," U.S. Const. art. I, § 6. Six of the original thirteen colonies provided for legislative immunity in their state constitutions either before or soon after the ratification of the Constitution, a development particularly important when the branch that political theorists feared would be most prone to excess was the legislative branch. See Tenney v. Brandhove, 341 U.S. at 374-75 & 374 n.3.

    The Supreme Court of the United States has held that state, regional, and local legislators are entitled to this ancient protection. See Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998). The Supreme Court identified several rationales for recognizing legislative immunity in the context of local legislators: (i) "[r]egardless of the level of government, the exercise of legislative discretion should not be inhibited by judicial interference or distorted by the fear of personal liability"; (ii) "the time and energy required to defend against a lawsuit are of particular concern at the local level, where the part-time citizen-legislator remains commonplace"; (iii) "the threat of liability may significantly deter service in local government, where prestige and pecuniary rewards may pale in comparison to the threat of civil liability"; and (iv) "certain deterrents to legislative abuse may be greater at the local level than at other levels of government," such as: (a) "[m]unicipalities themselves can be held liable for

-6-

constitutional violations"; and (b) "the ultimate check on legislative abuse -- the electoral process -- applies with equal force at the local level, where legislators are often more closely responsible to the electorate." Id. at 52-53.

In explaining which actions may rest behind the shield of legislative immunity, the Supreme Court stated that "[a]bsolute legislative immunity attaches to all actions taken 'in the sphere of legitimate legislative activity.'" Id. at 54 (citing Tenney v. Brandhove, 341 U.S. at 376). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it. . . . [I]t simply is 'not consonant with our scheme of government for a court to inquire into the motives of legislators.'" Id. at 54-55 (citing Tenney v. Brandhove, 341 U.S. at 377). Legislators may claim immunity even when they allegedly performed legislative actions with the intention of intimidating, silencing, or deterring a plaintiff from exercising his constitutional rights. See Tenney v. Brandhove, 341 U.S. at 370-71, 377-79. See also Bogan v. Scott-Harris, 523 U.S. at 55 ("We therefore held that the defendant in Tenney had acted in a legislative capacity even though he allegedly singled out the plaintiff for investigation in order to intimidate and silence plaintiff and deter and prevent him from effectively exercising his constitutional rights." (citations and internal quotations omitted)). The Supreme Court has reasoned that "[s]elf-discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses," because "[i]n times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed." Tenney v. Brandhove, 341 U.S. at 378.

The United States Court of Appeals for the Tenth Circuit has explored the boundaries of legislative immunity. To determine whether an action is within the sphere of legitimate legislative activity, courts must look at the function and nature of the act. See Kamplain v. Curry County Bd.

of Comm'rs, 159 F.3d 1248, 1251 (10th Cir. 1998)(citations omitted). "[A]t its core, the legislative function involves determining, formulating, and making policy." Id. at 1251. Also, "legislative actions must be done 'in relation to the business before' the legislative body." Id. (quoting Powell v. McCormack, 395 U.S. 486, 502 (1969)). "Not all actions taken at a legislative meeting by a local legislator are legislative for purposes of immunity. . . . Nor does voting on an issue, in and of itself, determine that the act is legislative in nature. Whether actions . . . are, in law and fact, an exercise of legislative power depends not on their form but upon whether they contain matter which is properly to be regarded as legislative in its character and effect." Id. at 1252 (citations and internal quotations omitted). The Tenth Circuit took care to note that its "inquiry into the nature of the acts at issue in this case, and the function of the [legislators] in committing those acts, does not conflict with the long-held principle that a legislator's or legislature's motive is not a proper consideration for legislative immunity." Id. at 1252 n. 4.

The Tenth Circuit has held that legislative immunity does not protect a legislator's administrative actions. Id. at 1253. An administrative action includes applying "known rules and legislation to make an administrative business decision" and monitoring and disciplining a citizen's presence and conduct at legislative meetings. Id. at 1252 (citations omitted).

The United States Court of Appeals for the Fourth Circuit has recognized that legislative immunity applies to prevent legislators from testifying even when they are not the defendants in a suit. As the Fourth Circuit explained, "we reject plaintiff's argument that he can circumvent the doctrine of legislative immunity by declining to name as defendants individual legislators. The purpose of the doctrine is to prevent legislators from having to testify regarding matters of legislative conduct, whether or not they are testifying to defend themselves." Schlitz v. Virginia, 854 F.2d 43, 46 (4th Cir.

-8-

1988)(citing Gravel v. United States, 408 U.S. 606, 616 (1972)), overruled on other grounds by Berkley v. Common Council, 63 F.3d 295 (4th Cir. 1995). The Fourth Circuit later overruled Schlitz's holding that municipalities are immune from suit under 42 U.S.C. § 1983 for actions by the local legislature, but indicated that Schlitz's reasoning on legislative immunity may still bar legislators from testifying in suits where they are not defendants. See Berkley v. Common Council, 63 F.3d at 303 n.9 ("Under [Baker v. Mayor and City Council of Baltimore, 894 F.2d 679, 682 (4th Cir. 1990)] and Schlitz, Charleston's council members may be privileged from testifying in federal district court as to their motives in enacting legislation. Because appellants do not challenge this testimonial privilege, except to the extent that such a privilege could be interpreted to afford municipalities immunity from liability under section 1983, we do not address herein the vitality of this privilege in the wake of [Owen v. City of Independence, 445 U.S. 622 (1980)] and today's holding.").

## ANALYSIS

Albert, Berting, and Jim West are entitled to legislative immunity, and the Plaintiffs cannot call them to the stand at trial.[3] Local legislators, like their counterparts at the state and federal levels, are immune from suit for actions taken in the sphere of legitimate legislative activity, regardless of the motive or intent of the official performing it. See Bogan v. Scott-Harris, 523 U.S. at 54-5. Whether an action is within the sphere of legitimate legislative activity depends on the function and nature of

---

[3] The Plaintiffs state in their Response that they have subpoenaed Councilor Geoff Rodgers. See Response at 1. The Plaintiffs, however, do not identify the basis for calling Rodgers, nor do they ask the Court to allow them to call Rodgers to the stand even though they specifically request this action regarding Albert, Berting, and Jim West. See id. at 3. The Plaintiffs did not mention Rodgers at the hearing. Given the lack of argument concerning Rodgers' potential testimony, and given that the Plaintiffs have not presented the Court with his alleged statements or the context for them, the Court will leave unaddressed at this time whether the Plaintiffs may call him to the stand at trial. If the Plaintiffs wish to call Rodgers, they will need to present the Court with more details to assist the Court in making an informed decision whether immunity applies to his statements.

the act. See Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1251. The core of the legislative function is determining, formulating, and making policy. See id. The legislative action must be done in relation to the business before the legislative body. See id. Legislative actions do not include decisions that are administrative in nature. See id. at 1252-53.

As a threshold matter, the Court must determine whether legislative immunity should apply in a situation such as this one, where the legislators have invoked the principle not to shield themselves from suit but to avoid testifying in a trial where non-legislators are the Defendants. While the Supreme Court and the Tenth Circuit have repeatedly upheld the centuries-old tradition of legislative immunity, those cases have arisen in the context of suits against the legislators themselves or the imposition of contempt sanctions on legislators personally. See Bogan v. Scott-Harris, 523 U.S. at 46; Spallone v. United States, 493 U.S. 265, 274 (1990); Tenney v. Brandhove, 341 U.S. at 371; Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1250; Fry v. Board of County Comm'rs, 7 F.3d 936, 937 (10th Cir. 1993). The initial question before the Court is whether, to the extent that courts have left this precise issue unaddressed, it should recognize legislative immunity against the act of testifying itself.

The Court concludes that the same policy considerations that bar suit against legislators for legislative acts also prevents the Court from compelling them to testify about legislative acts. The knowledge that a legislator may have to justify his actions in court one day may hinder the free exercise of his judgment. See Bogan v. Scott-Harris, 523 U.S. at 52-53. The time and expense incurred in testifying, perhaps in another city, for potentially any legislative act done while in office may deter some legislators from seeking election in the first place. See id. Finally, citizens may be able to more effectively question, and turn out of office, their local legislators than state or federal lawmakers, rendering judicial inquiry unnecessary. See id. The Court also notes that the Fourth

Circuit, in the past, has expressed support for a testimonial privilege based on legislative immunity, though it is unclear whether the Fourth Circuit still maintains that view. See Berkley v. Common Council, 63 F.3d at 303 n.9; Schlitz v. Virginia, 854 F.2d at 46.

The acts for which the Plaintiffs wish to call Albert, Berting, and Jim West to the stand were legislative in nature. The Plaintiffs wish to inquire into Berting's statement that she had visited a Beehive Homes facility in Farmington and found it was consistent with the neighborhood. See County Council Minutes for January 27, 2004 at 8. Berting made this remark during the County Council's consideration of her substitute amendment that would allow a fourteen-resident group home in single family neighborhoods if it complied with the requirements spelled out in County Code § 16-286. In the context of the proceeding, Berting's statement appears to have been made to support her amendment by explaining that she did not believe that group homes, like the one that the Plaintiffs seek to establish in the County, harm the residential character of single family neighborhoods. As part of the County Council's deliberation on her amendment, Berting's representation is legislative in nature because debate on the amendment involved making new policy for the County regarding the authorized presence of group homes in single family neighborhoods. Because Berting's statement came as part of the County Council's consideration of new policy, it was a legislative act and legislative immunity shields her from testifying concerning it.

At a later hearing, the County Council heard debate and public comment on a proposal to accept, with some modifications, a draft ordinance by the County Attorney that would allow group homes to house more than the eight-person maximum by a special use permit. See County Council Minutes for September 14, 2004 at 3-4. After the County Council took an initial vote in favor of the proposal, Albert stated that she was not interested in what takes place in citizens' homes, but she did

want to preserve the residential character of the County's communities. See id. at 4. Jim West expressed his dislike of being threatened with lawsuits. See id.

Even if the Court accepts the Plaintiffs' (disputed) transcription of these remarks – wherein Albert challenged the Plaintiffs to "bring it [a lawsuit] on" and Jim West expressed that he is "really getting tired of being beat over the head with the law" and doesn't want to hear about the law anymore, Transcription of Los Alamos County Council Meeting, 9/14/04 at 1 – the Court determines that their comments are legislative in nature. The two Councilors made their comments after Jeff West, Beehive Homes' attorney, had told the County Council that they were giving too much weight to the neighborhood's interests and not enough to the requirements of the Fair Housing Amendments Act ("FHAA"). See id. Jeff West warned that the County Council may be violating the FHAA. See id.

Seen in this light, Albert's and Jim West's comments formed part of a debate on the proper policy on group homes in single family neighborhoods. The statements were responses to Jeff West's comments, which were sought as part of the public comment on a specific proposal. As such, they were part of the cut and thrust of legislative debate between members of the County Council and members of the public. Also, the comments articulated the reasons why Albert and Jim West were voting -- and thus helping to shape policy -- in a certain way. Albert's comment expressed her desire to pass a law only if it protected the residential character of single family neighborhoods even if that provoked an FHAA suit. Jim West conveyed his belief that the County had to consider both the needs of group homes and the wishes of the County's residents in making its decision, and that he did not like being, as he felt, threatened with a lawsuit if the County did not agree with the Plaintiffs. As part of legislative debate and the process of formulating policy in the County Council, the comments were

legislative in nature, and legislative immunity protects them.

The Plaintiffs attack the assertion of legislative immunity on two grounds. First, the Plaintiffs characterize Albert's and Jim West's comments as an attack on them and an effort to censure them for invoking their rights. See Response at 2-3. Even if the Plaintiffs correctly describe Albert's and Jim West's actions, the Supreme Court has held that legislators do not lose immunity when they attempt to censure, intimidate, or prevent someone from exercising one's constitutional rights, so long as the act in question is legislative in nature. See Tenney v. Brandhove, 341 U.S. at 370-71, 377-79. See also Bogan v. Scott-Harris, 523 U.S. at 55. The voters, not the courts, must correct such abuses, if they exist. See Tenney v. Brandhove, 341 U.S. at 378.

The Plaintiffs also reason that Albert's and Jim West's actions are administrative in nature. See Response at 2-3. Yet these statements do not involve the disciplining of audience members; instead, the comments merely expressed disagreement with Jeff West's statements without punishing him, such as by ejecting him from the room. See Kamplain v. Curry County Bd. of Comm'rs, 159 F.3d at 1252. Nor were Albert's and Jim West's remarks a business decision in any sense of the word. See id. The comments were legislative in nature, because they were part of the process whereby the County Council made a decision on the proper policy concerning group homes in single family neighborhoods. As legislative acts, legislative immunity prevents the Plaintiffs from calling the Councilors to the stand to testify about them.

**IT IS ORDERED** that Defendant's Motion in Limine to Exclude Members of the County Council and Planning and Zoning Commission as Witnesses and Points and Authorities in Support Thereof is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Jeffrey A. Dahl
Lamb, Metzgar, Lines & Dahl, P.A.
Albuquerque, New Mexico

– and –

Stanley N. Hatch
Hatch, Allen & Shepherd
Albuquerque, New Mexico

 *Attorneys for Plaintiffs Jama Investments LLC and Jama Holdings, LLC*

Stanley N. Hatch
Hatch, Allen & Shepherd
Albuquerque, New Mexico

– and –

Judd C. West
Doughty & West PA
Albuquerque, New Mexico

 *Attorneys for Plaintiff Warriors, Inc.*

Pamela S. Bacon
Peter A. Dwyer
Daniel A. Gonzales
County Attorneys
Los Alamos, New Mexico

– and –

Randy S. Bartell
Carolyn A. Wolf
Montgomery & Andrews
Santa Fe, New Mexico

 *Attorneys for Defendants*

-14-